UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION


UNITED STATES OF AMERICA,           )
                                    )
            Plaintiff,              )
                                    ) Case No.
        vs.                         ) 18-CR-5017-MDH-1
                                    )
                                    )
JACK D. DAGGETT,                    )
                                    )
            Defendant.              )




                    SENTENCING
        BEFORE THE HONORABLE M. DOUGLAS HARPOOL
         TUESDAY, AUGUST 29, 2018; 9:35 A.M.
              SPRINGFIELD, MISSOURI




APPEARANCES:

FOR THE PLAINTIFF:          MS. AMI HARSHAD PATEL MILLER
                            UNITED STATES ATTORNEY'S OFFICE
                            901 St. Louis, Ste. 500
                            Springfield, MO 65806


FOR THE DEFENDANT:          MR. IAN A. LEWIS
                            FEDERAL PUBLIC DEFENDER'S OFFICE
                            901 St. Louis St., Ste. 801
                            Springfield, MO 65806


COURT REPORTER:             MS. JEANNINE RANKIN, RPR, CSR
                            UNITED STATES DISTRICT COURT
                            222 N. Hammons Parkway
                            Springfield, MO 65806




        Proceedings recorded by mechanical stenography;
transcript produced by computer.

1                    USA v JACK D. DAGGETT

2               CASE NO. 18-CR-5017-MDH-1

3                    SENTENCING

4                  August 29, 2018

5               *  *  *  *  *  *

6          THE COURT:  We are here for the sentencing of Jack

7 Daggett.  Who will be appearing on behalf of the United

8 States?

9          MS. MILLER:  Ami Miller for the government, Your

10 Honor.

11         THE COURT:  And on behalf of the defendant?

12         MR. LEWIS:  Ian Lewis for the defense, Your Honor.

13         THE COURT:  Mr. Daggett, my name is Doug Harpool.

14 I'm a federal district judge and it is my responsibility this

15 morning to sentence you for the crime you've committed.

16          The law instructs me to sentence you to a sentence

17 which is sufficient but not greater than necessary to meet the

18 objectives of the U.S. sentencing laws.  So what we're going

19 to do in this hearing, the first thing we'll do is we'll

20 consult those laws and we'll first look at what the Congress

21 and president have enacted as to the authorized punishment for

22 your crime.  Any sentence I impose, of course, has to be one

23 authorized by the statute and the law.

24          We'll then look at the U.S. Sentencing Guidelines.

25 The U.S. Sentencing Guidelines are adopted by the U.S.

1  Sentencing Commission and the Supreme Court has told me that

2  in every case I have to calculate what your sentence would be

3  if I adopted a guideline sentence.  And adopting a guideline

4  means we have to assign an offense level to you and a criminal

5  history category and then look at a table in the back.  So

6  that's the second thing we'll do in this hearing.

7        The third is I'll listen to the lawyers make

8  arguments on other factors relevant to sentencing under Title

9  18, Section 3553(a).  There's lots of factors relevant to

10 sentencing that are described in the law other than just the

11 guidelines.  We'll consider every one of those factors.  Even

12 if we don't specifically mention it, please understand I will

13 be considering that factor, too.  We'll try to focus the

14 comments -- our comments on those that are mentioned by the

15 lawyers and those that may be ultimately most determinative of

16 my final sentence.

17       After the lawyers have had their say and made their

18 recommendation, I'll give you a chance to say something to me,

19 if you want to.  Please understand, you have no obligation to

20 say anything, but if you want to say something, I will give

21 you that chance because if there's something you want to say,

22 I want to hear it.  When that's finished, I'll make my final

23 decision.

24       Before entering the courtroom, I want to assure you

25 I've read everything that's been submitted to me but I've not

                              3

1   made any final decision and I won't until we complete the

2   process that we've gone through.  But before you leave this

3   courtroom, I will have made that final decision, I will have

4   announced it to you and I'll explain it to you.  All right?

5              You understand what we're going to do?

6              THE DEFENDANT:  Yes, sir.

7              THE COURT:  Now, a presentence investigation report

8   was prepared and that's one of the things I've read.  Have you

9   read a copy of your presentence investigation report?

10             THE DEFENDANT:  Yes, sir.

11             THE COURT:  All right.  Had a chance to talk to your

12  lawyer about that report?

13             THE DEFENDANT:  Yes, sir.

14             THE COURT:  All right.  Go ahead and be seated,

15  then, we'll get started.

16             Counsel, the defendant is guilty of the crime of

17  receipt and distribution of child pornography in violation of

18  18 U.S.C. 2252(a)(2) and (b)(1).  As I understand the law, the

19  sentence must be at least five years, can be as long as 20

20  years in prison, it could include a fine as much as $250,000,

21  could include supervised release at least five years and could

22  go on as long as life, payment of a $100 mandatory special

23  assessment, then I think there can also be a special

24  assessment under the $5,000 JVTA special assessment.

25             Everybody agree that's the potential punishment the

4

1  defendant is facing?

2           MS. MILLER:  Yes, Your Honor.

3           MR. LEWIS:  Yes, Your Honor.

4           THE COURT:  Now let's turn to the U.S. Sentencing

5  Guidelines.  The presentence investigation report assigns an

6  offense level of 32 and a criminal history of one.

7           Are there any objections to either of those which I

8  need to take up or consider?

9           MS. MILLER:  None from the government, Your Honor.

10          MR. LEWIS:  No objections that affect the

11 guidelines, Your Honor.

12          THE COURT:  My understanding is you do have -- your

13 client is not admitting some of the provisions of the

14 presentence investigation report; is that correct?

15          MR. LEWIS:  That is correct, Your Honor.

16          THE COURT:  That objection will be noted.

17          Mr. Daggett, the sentencing guideline has offense

18 levels of from 1 to 43.  And it -- as I said, we all agree

19 that properly using this book you are assigned a 32.  It has

20 criminal history categories of from one to six, six being the

21 highest.  We all agree you're the lowest, you're the one.

22          So in order to see what your guideline sentence

23 would be recommended by the U.S. Sentencing Commission -- or

24 suggested by the U.S. Sentencing Commission guideline, I

25 should say, we go to 32 and to the first category and that's a

                              5

1    sentence of between 121 and 151 months.

2            Any disagreement that that's our guideline sentence?

3            MS. MILLER:  None from the government.

4            MR. LEWIS:  Nor from the defense.

5            THE COURT:  All right.  So now we'll go to the third

6    step and that is look at other factors relevant to sentencing

7    and determine whether that guideline sentence is appropriate

8    in your case or whether a sentence above or below the

9    guideline is appropriate.  Toward that end I'm going to

10   recognize Ms. Miller on behalf the United States to make her

11   presentation.  Your lawyer will get the opportunity when she's

12   finished.

13           Ms. Miller.

14           MS. MILLER:  Thank you, Your Honor.

15           Your Honor, the government has filed a sentencing

16   memorandum in response to the defendant's in this case.

17           THE COURT:  I have reviewed it.

18           MS. MILLER:  Thank you, Your Honor.

19           In that we have requested an upward variance of 180

20   months to be followed by a term of life supervised release.

21   There are a variety of the 3553(a) factors I believe that in

22   this specific case would support an upward variance or at the

23   very least the high end of the guideline range.

24           One of the main factors I believe is the defendant's

25   offense conduct and his history and characteristics.  Reading

                                      6

1    through the PSR it notes for the Court that this defendant, he
2    did give a post-Miranda statement and he was incredibly
3    forthright with law enforcement, which is a credit to him, but
4    what he was forthright with is extremely disturbing and
5    concerning.

6            This defendant related a lengthy history of being in
7    and out of homes in the juvenile system in both New Hampshire
8    and Maine, which is unfortunate; however, he described that he
9    had sexually abused numerous children and at one point in his
10   interview stated that he couldn't even count or recall.  When
11   asked to estimate, he believed that he had by the time he was
12   18 sexually abused approximately 30 to 40 children in the
13   group homes that he was in.

14           He described that the first time he was caught
15   sexually abusing another child he was sent to therapy and when
16   he was sent to therapy he attempted to set fire and burn down
17   the therapist's office.

18           So needless to say I think it's very apparent from
19   the defendant's own statement that he had a very disturbing
20   childhood and has had a life-long history of addiction to
21   child pornography which he admitted to and to hands-on
22   offenses with other children.

23           When you take that in connection with the fact that
24   after he has that life-long history, he's caught receiving and
25   distributing child pornography again.  When he was giving his

                                    7

statement he stated to law enforcement, I look at child
pornography approximately once to twice a day and I masturbate
to it so that I don't reoffend, so that I don't go out and
molest other children.  This is clearly someone who has a very
significant problem and one of the 3553(a) factors is
protection of the public.

So this is a situation and case where we have a
defendant who has for the better part of his life either been
molesting children or sexually abusing other individuals and
being addicted to child pornography and how do we get the
public protected?  And I think that in this particular case
given his history it requires a lengthy term of incarceration.

I will tell the Court that we also requested the
juvenile records from New Hampshire and Maine, though as the
PSR stated, much like the probation and parole office, we did
not receive anything as of this point, so I cannot give the
Court anything specific outside of what the defendant stated
in his own post-Miranda statement to law enforcement.

The other factors in this case, Your Honor, nature
and circumstances of the offense, this defendant in total had
6,135 images and approximately 30 videos.  The images and
videos were primarily of prepubescent minors.  A large number
of the images and videos included infants and included
bestiality and a significant amount of rape and bondage.  I
believe there were three images of bestiality; however, there

8

1  were I believe over a couple hundred images with rape and
2  bondage.
3          So this defendant did have a significant amount of
4  images, clearly not as much as the Court has seen in the
5  spectrum that has come before Your Honor but I believe when
6  you couple that with his history and characteristics, that is
7  the reason why we're asking for the upward variance in this
8  case.  And I do believe that a lengthy term of supervised
9  release -- and we've requested life -- would be necessary to
10 ensure protection for the public in this case.
11         Thank you, Your Honor.
12         THE COURT:  Is there a restitution request?
13         MS. MILLER:  Oh, yes.  Your Honor, there is two
14 restitution requests in this case.  The first restitution
15 request comes from the victim is the Sponge Bob series and is
16 identified by the pseudonym Andy, and as I've laid out for the
17 Court, there are 11 images.  That victim is requesting 58,415.
18 The next five restitution requests come from the five victims
19 in the 8kid series which are John Does 1 through 5.  There was
20 2,357 identified images of the victims in the 8kid series.
21 They're requesting 15,000 per victim based upon the harm
22 caused to them.  We are asking that the Court order
23 restitution as it deems fair and just along the parameters of
24 *Paroline*, Your Honor.
25         THE COURT:  Thank you.

9

1          Mr. Lewis.

2          MR. LEWIS:  If it please the Court.

3          THE COURT:  Proceed.

4          MR. LEWIS:  Thank you.

5          Your Honor, let me speak briefly to restitution.

6          Your Honor, I've talked this over with my client.

7    We also agree that the Court -- we have full faith that the

8    Court can render a fair restitution judgment.

9          Regarding the government's argument, at first blush

10   it makes sense.  But once I received it yesterday or the day

11   before, started picking through it, I have to say that the

12   government's position and their reasoning for an upward

13   variance truly violates three -- at least three areas of

14   time-honored concepts that we have in sentencing.  And I love

15   when things come in threes.

16         But first, uniformity of sentencing.  Not just this

17   Court but most Courts in the United States when it deals with

18   the child pornography guideline are downwardly departing from

19   it because of what I've outlined in my memo.  And I'm not

20   going to spend too much time on that, Your Honor, but it's

21   difficult for me to understand is this a variance based upon

22   the current guideline that we all know -- even the government

23   at many times has joined us in this argument -- we know is

24   flawed or is it an upward variance from the guidelines that

25   typically the parties can agree to which is much lower than

                              10

1   the guideline that has been put forward by the probation
 2   office?
 3           So I don't know if the government is asking for 180
 4   months over the guideline of 121 to 150 something or in all
 5   other cases that have come before this Court in the past
 6   three, four years, the Court has rendered sentences well below
 7   121 to 151 based upon the antiquity of some of the guideline
 8   enhancements.  So are we talking about a jump of five years
 9   from the low end or a jump of 10 years from the low end?
10           Either way it cuts to why are we treating
11   Mr. Daggett differently than almost everyone else that has
12   come before this Court or any Court in the Western District of
13   Missouri where the government is not recognizing that the
14   guideline in this case is flawed?  It has been deemed flawed
15   by their own members.  And so I feel that if we render a
16   180-month sentence without giving any kind of due credence to
17   all of the arguments in the past, we fly in the face of
18   uniformity of sentencing.  He should be treated the same as
19   all others.
20           Second, what evidence is there that my client did
21   these actions in Maine?  The Court has not been presented any
22   evidence of my client molesting multiple children in Maine or
23   other homes.  There's a reason -- and I know I get derided by
24   some people for making the *Menteer* objection but this is why I
25   make the *Menteer* objection.

11

1        We objected to the offense conduct so under our law

2    my client has not admitted to the facts that are presented in

3    the offense conduct so the information in the PSI cannot be

4    used as evidence, as fact.  So unless the government presents

5    some evidence that my client committed these crimes, then it's

6    merely speculation.

7        But I'll give it to the government for my third

8    argument.  I'll give it to my government.  Let's say they do

9    play whatever recordings or whatever statements.  Well, then

10   now we're into the corpus delicti.  So now we're punishing the

11   client based merely upon his own statement.

12       I would assume the government in their vast amount

13   of resources could find one of 20 possibly victims to come and

14   corroborate any of the statements or some judicial record that

15   would hint to corroboration of his statements.  But there

16   isn't any; quite the reverse.  If there is a juvenile record,

17   it speaks nothing of child molestation.

18       So we should punish Mr. Daggett for the crime he

19   committed and that crime is receipt and distribution of child

20   pornography.  Until the government can present some evidence

21   beyond his own admission that is completely uncorroborated by

22   the body of evidence, I think that is the only fair thing this

23   Court can do at this time.

24       Now, I don't want to belie that the government may

25   have concerns -- the Court may have concern about public

1   safety.  I do understand that factor in 3553(a).  But let us

2   not forget that the BOP and our law system under 4248 have a

3   mechanism in place.  If they truly believe my client suffers

4   from a mental disease and because of that mental disease he is

5   a sexually violent predator, the BOP and the Courts, they have

6   a remedy for that.  But I think trying to fix it on this end

7   based upon this lack of evidence would be inappropriate.

8           The other thing the government mentioned was the

9   type and nature.  When I think about the type and nature of

10  child pornography, it always kind of -- there is no good child

11  pornography.  It's all bad.  So now we're just talking about

12  shades of bad.  But in my memo I did not attack

13  sadomasochistic violent conduct, prepubescent minor.  I did

14  not attack those because those are -- that's supported by the

15  evidence and those guideline enhancements are supported by the

16  evidence and should apply.  So in a backwards way I'm saying

17  the guidelines have already taken into account the type and

18  nature of the conduct, and still even when we take into

19  account the type and nature of the conduct, we know these

20  guidelines are flawed.

21          I am asking for a sentence to reflect -- like every

22  sentence I've argued for the past handful of years, to reflect

23  the use of a computer enhancement as antiquated and for the

24  number of images enhancement to also be antiquated and based

25  upon a flawed concept of drug enhancement use and amounts and

                                    13

1   to render a sentence that is uniform with almost everyone else

2   that has come into this courtroom.  And 60 months I know is

3   the lowest but if you take into account all those factors,

4   it's right in the middle of the guideline range that I would

5   suggest.

6           Thank you, Your Honor.

7           THE COURT:  As I understand your argument, it's

8   because you filed an objection to the factual material in the

9   presentence investigation report that I should not consider

10  that as relevant conduct unless the government presents

11  specific evidence to support what's in the presentence

12  investigation report?

13          MR. LEWIS:  Your Honor, my argument is the Eighth

14  Circuit has ruled facts not objected to in the PSI become

15  facts and I have been -- I have been burned and I have been

16  saved by that ruling.  And in this case he objected to his own

17  statement being presented in the PSI and until otherwise

18  ruled, it is not a fact that he's admitting to and the

19  government would have to prove that.  Even if they did bring

20  his statement to the Court's attention, the third argument of

21  what corroboration beyond this do we have to punish him for

22  this?

23          Thank you.

24          THE COURT:  Ms. Miller, do you want to comment on

25  just that issue?

                                14

```
 1              MS. MILLER:  Yes.  Thank you, Your Honor.

 2              The standard is preponderance of the evidence.  And

 3     as Mr. Lewis is objecting to it and the Court would like to

 4     hear evidence, the special agent -- Homeland Security Special

 5     Agent J. D. Holdman who took the defendant's interview, is

 6     present here today and can testify to the statements made by

 7     the defendant; however, the government will also say if the

 8     defendant is going to now say he objects to the statements he

 9     made in his interview, his own statement which has been

10     provided to him, that also goes to acceptance of

11     responsibility.  Can't have it both ways.

12              But at this time if the Court would like to hear

13     from Special Agent Holdman, the government can put him on the

14     stand and he can testify to the statements made by the

15     defendant at the time of his interview.

16              I will also say -- and I will be happy to brief this

17     for the Court -- when it comes to sentencing enhancement

18     factors, including history and characteristics, Mr. Lewis

19     brought up corpus delicti.  The defendant's own statements and

20     own admissions of past criminal conduct can be taken as the

21     enhancement factor.  The Court need not require any other

22     corroboration beyond the admissions that a defendant has made

23     when it's going to sentencing enhancement factors.  This is

24     not to the actual offense of guilt, this is the preponderance

25     of the evidence standard for sentencing enhancement.
```

```
 1                THE COURT:  You want to say something?

 2                MR. LEWIS:  Very briefly.

 3                I understand that.  But let us not forget his

 4      statements are apparently what he did while he was in the

 5      foster care system with no date specific.  He was in the

 6      foster care system starting at the age of seven, so that is

 7      the problem.  I understand that the corpus delicti at a

 8      sentencing hearing may be able to -- we might be able to end

 9      run it, but the reason it exists is because of this.  They're

10      not going to be able with specificity to corroborate any of

11      his statement, especially since we're beginning at age of

12      seven.  When were these alleged -- if all this alleged conduct

13      happened when he was eight years old, then it's really not

14      criminal.

15                THE COURT:  Let me ask you this:  Do you agree that

16      if the officer was called he would say the statements in the

17      presentence investigation report were made by your client in

18      the interview?

19                MR. LEWIS:  Yes.

20                THE COURT:  You're willing to stipulate to that

21      much?

22                MR. LEWIS:  Yes, Your Honor.

23                THE COURT:  Okay.  I don't really see any reason to

24      call him, then, if -- I still understand your arguments but --

25                MR. LEWIS:  Thank you, Your Honor.
```

16

1  THE COURT:  All right.  Do you want to say something

2 else?

3  MS. MILLER:  Your Honor, if I could just mention one

4 other factor.

5  Probation and parole was able to obtain some of the

6 records and the statement that the defendant made that the

7 first time he was caught sexually molesting another child he

8 was sent to therapy and he attempted to burn down the office,

9 probation and parole was able to get that arson juvenile

10 adjudication, and as it's noted on page 8, Paragraph 42, the

11 defendant was in the juvenile courts of Maine charged for

12 arson and he was adjudicated and there was a period of

13 detention.  Although they weren't able to get any of the other

14 records, that was verified by probation and parole and the

15 defendant admitted to that statement.

16  Furthermore, the defendant's mother was interviewed

17 as part of the presentence investigation report and she also

18 verified much, if not all, the information that was provided

19 by the defendant as well.  So I will say that it's not just

20 the defendant's statements; there are other things that do

21 corroborate what the defendant stated.

22  THE COURT:  Those are things he's objected to?

23  MS. MILLER:  Correct, Your Honor.

24  THE COURT:  All right.  Lawyers have anything else

25 they want -- on this issue?

17

```
 1              MR. LEWIS:  No, Your Honor.

 2              MS. MILLER:  No.

 3              THE COURT:  Or on sentence generally?

 4              I want to give Mr. Daggett a chance -- does he wish

 5      to say something to the Court?

 6              THE DEFENDANT:  I have nothing to say, Your Honor.

 7              THE COURT:  All right.

 8              All right.  Well, let me now attempt to let you know

 9      my thinking about your sentence and where I came to the

10      conclusion I did, or I'm going to announce.

11              Let me first say that I recognize that there are

12      factors that have placed you in a difficult position in life.

13      You suffer from ADHD, Asperger's, you were placed in foster

14      care as a young child, and that you also suffered some abuse.

15              THE DEFENDANT:  (Nods head.)

16              THE COURT:  All of those explain, perhaps, where you

17      got off course.  But in your sentence, you have to understand,

18      I have an obligation to protect the public, and if all of

19      these factors I've just mentioned cause you to be a risk to

20      the public -- and in this case particularly to our children --

21      then I have to -- I have to take a sentence that will protect

22      the public from you.

23              If there are others out there who are struggling the

24      way you said you were -- I think your explanation is you

25      consulted child pornography actually as a release for these
```

1    urges, I suppose that that's better than the -- continuing to
2    act out on the urges but it's still not lawful.  And the
3    sentence I impose I hope would encourage someone who is in
4    your situation to make an even better decision and that would
5    be to seek counseling and treatment to control the urges.

6          I simply can't understand how anybody finds images
7    of children or children themselves to be sexually exciting or
8    a mode of release.  I'm confident our society should be better
9    than that and I believe it mainly is.

10          So what we have to do is find a treatment program
11   within the Bureau of Prisons to try to help you address
12   whatever it is you're dealing with, but it won't be successful
13   if you don't want it to be.  So whatever attitude you have
14   that led allegedly to you burning down the counselor's office
15   or that type of attitude, that's not going to work.  You're
16   not going to get through this problem without you wanting to
17   get through it.  Children are too precious.

18          I don't know exactly what happened to you, I just
19   know what's in the presentence investigation report, but I'll
20   tell you this, that acting out toward children won't make
21   whatever hurt you feel from what happened to you go away.  It
22   won't help.  And for whatever hurt you feel for what happened
23   to you, we've got to find a better way to deal with it and
24   you've got to find a better way to deal with it.

25          Your lawyer argues that the guidelines are flawed.

19

1  That's well established in things I've said in the past from

2  this bench and from things the U.S. Sentencing Commission says

3  itself.  Their own publications acknowledge the guidelines

4  are.  However, on the continuum that I apply to these kind of

5  cases, I don't feel it's fair to sentence you simply as

6  someone who has looked at child pornography because there is

7  some related conduct.  I think, at least according to what you

8  told the officer in your past, that you've gone beyond just

9  looking and you've acted.  And that requires a more -- a

10  greater sentence than what I might otherwise give in just what

11  I call a looking case, a case where you've simply looked.

12        The number of images you have are not particularly

13  high but as I've said from this bench -- and Mr. Lewis will

14  remember -- the number of images isn't necessarily that

15  significant to me in terms of what my sentence should be, and

16  that cuts both ways.  When the images are real high, I don't

17  necessarily increase the sentence as much as some would but if

18  the number of images are low, that doesn't necessarily excuse

19  the criminal conduct.  I am concerned about the acting out in

20  your case.

21        So I am not going to go beyond the guidelines.  In

22  fact, I'm going to go a little below.  I'm going to go to the

23  middle of the guidelines, recognizing your Asperger's

24  syndrome, your ADHD, that you were a victim of childhood

25  abuse, that you were in foster care for a long time, and that

1  the acting out, at least from what we can tell, is somewhat

2  dated, not -- not very recent.

3          So pursuant to the Sentencing Reform Act of 1984,

4  it's the judgment of this Court that defendant Jack Daggett is

5  hereby committed to the custody of the Bureau of Prisons for

6  144 months.  Upon release from imprisonment the defendant will

7  be placed on supervised release for life.

8          I want to talk to you for a second about supervised

9  release.  You told me you read your presentence investigation

10  report?

11          THE DEFENDANT:  (Nods head.)

12          THE COURT:  There's a lot of information in that.

13  One of the things, it talks about the conditions of supervised

14  release that you're going to have to live by.  Because I am

15  concerned about protecting the public, there are some

16  significant restrictions on what you can and cannot do even

17  after you get out of prison.  Now, those are subject to

18  modification later if circumstances change but they put some

19  real restrictions on you.  Understand, those restrictions will

20  impact what you can and cannot do after you're released from

21  prison but those are designed to help you not get back into

22  trouble and not yield to whatever urge or darkness has caused

23  you your failures in the past.

24          If you feel at some point after you're out of prison

25  that you're failing or that this urge is coming back or it's

1  difficult to control, please get help before you act out,
2  before you reaccess child pornography.  Let's don't have
3  anymore victims.

4          And there are child pornography -- even people
5  you've never seen before, they are victims.  They'll have to
6  deal with what happened to them for the rest of their life.
7  We don't need anymore victims.  So you need to follow those
8  rules.  If you don't, understand you can be sent back to
9  prison.  So follow those rules precisely.

10         Now, I'm not going to impose a fine.  I don't think
11 you really have the ability to pay a fine.  You do have to pay
12 the $100 special assessment.  I find you do not have the
13 ability to pay the $5,000 special assessment required by the
14 Justice for Victims of Trafficking Act and I waive that
15 assessment.  You do have to comply with the mandatory and
16 standard conditions adopted by the Court in addition to those
17 special conditions in your presentence investigation report.
18 I am going to recommend that you participate in the BOP sex
19 offender treatment program and that you be designated at a
20 suitable SOMP facility where you can receive that treatment.

21         By way of restitution, I recognize that you're not
22 in a financial position and that you didn't personally act out
23 against these individuals but you did view them being
24 victimized, so I am going to order restitution in the amount
25 of $1500 to the Sponge Bob series and $5,000 to the 8kid

1    series to be evenly divided among the victims of that series.
2    I'm going to ask Ms. Miller to provide me with a restitution
3    judgment setting forth proper addresses where we pay those
4    amounts.

5           I'm not going to -- obviously, I know you can't pay
6    it all at once.  Make payments while you're in prison at the
7    rate of 10 percent of whatever earnings you have in prison.
8    When you get out, starting 30 days after you're out of prison,
9    then I expect you to pay no less than $100 a month or 10
10   percent of your earnings, whatever is greater.  I'm not going
11   to have interest accrue but there would be penalties if you
12   failed to comply.  And you also -- if you were to be in a
13   position where it could all be paid at once, the government
14   has the right to try to collect it all at once immediately if
15   something were to happen where you would have adequate funds
16   to do so.

17          You have a right to appeal the sentence I've imposed
18   upon you.  If you want to appeal, you need to do so within 14
19   days.  If you don't appeal within 14 days, you risk losing the
20   right to raise issues that otherwise might be raised.

21          Do you understand that?

22          THE DEFENDANT:  Uh-huh.

23          THE COURT:  Anything further on behalf the
24   government?

25          MS. MILLER:  Nothing, Your Honor.

Case 3:18-cr-05017-MDH   Document 34   Filed 09/05/18   Page 23 of 25

```
 1              THE COURT:  Anything further, Mr. Lewis?

 2              MR. LEWIS:  Yes, Your Honor, if I may quickly.

 3              I may have missed it and I'm unclear.  The reason

 4    the Court is rendering a mid-range guideline range sentence is

 5    for public safety issues?  Because the Court -- regarding

 6    Asperger's and --

 7              THE COURT:  That is one consideration, yes.

 8              MR. LEWIS:  Okay.  Thank you, Your Honor.  That is

 9    all.

10              THE COURT:  Anything further?

11              MS. MILLER:  Nothing from the government.

12              THE COURT:  Is there a location request?

13              MR. LEWIS:  Buckner, North Carolina, if you could,

14    Your Honor.

15              THE COURT:  We will make that recommendation.

16              Mr. Daggett, our goal for you is for you to put this

17    darkness and replace it with something that would allow you to

18    be free in society and not a danger to others and that you

19    could be free of this burden and darkness that you feel, that

20    you've clearly felt for some time.  All right?

21              THE DEFENDANT:  Yes, sir.

22              THE COURT:  All right.  Good luck to you.

23              We'll be in recess.

24              (Court stands in recess at 10:12 a.m.)

25
```

Case 3:18-cr-05017-MDH   Document 34   Filed 09/05/18   Page 24 of 25

CERTIFICATE OF OFFICIAL REPORTER

    I, Jeannine M. Rankin, Federal Official Court Reporter, in and for the United States District Court for the Western District of Missouri, Southern Division, do hereby certify that the foregoing is a true and correct transcript of the stenographically reported proceedings.




                        /s/ Jeannine M. Rankin

Date:     09/05/18    Jeannine M. Rankin, CCR, CSR, RPR